|  |  |
|---|---|
| **Wright & Reihner, P.C.**<br>By: Joseph T. Wright, Jr., Esquire<br>     I.D. No. 32690<br>     Danielle M. Mulcahey, Esquire<br>     I.D. No. 76999<br>148 Adams Avenue<br>Scranton, Pennsylvania 18503<br>(570) 961-1166 Telephone<br>(570) 961-1199 Facsimile<br><br>**Kirkpatrick & Lockhart**<br>**Preston Gates Ellis LLP**<br>By: David R. Fine, Esquire<br>17 North Second Street, 18th Floor<br>Harrisburg, PA 17101<br>(717) 231-4500 Telephone<br>(717) 231-4501 Facsimile<br>By: Kenneth Komoroski, Esquire<br>Henry W. Oliver Bldg., 535 Smithfield St.<br>Pittsburgh, PA 15222-2312<br>(412) 355-6500 Telephone<br>(412) 355-6501 Facsimile | Attorneys for Defendant |

| | | |
|---|---|---|
| LOUISE E. KNAUER, TRUSTEE<br>of the CHARLES A. KNAUER<br>TRUST | : <br> : <br> : <br> : | IN THE UNITED STATES DISTRICT<br>COURT FOR THE MIDDLE<br>DISTRICT OF PENNSYLVANIA |
|                Plaintiffs,<br>v. | : <br> : <br> : | CIVIL ACTION – LAW<br>JURY TRIAL DEMANDED |
| CABOT OIL & GAS<br>CORPORATION,<br>               Defendant. | : <br> : <br> : | NO. 3:08-cv-837<br>FILED VIA ECF<br>(Honorable James M. Munley) |

## **BRIEF IN SUPPORT OF MOTION TO DISMISS**

## **I.   INTRODUCTION**

Plaintiffs entered into an oil-and-gas lease (the "Lease") with Cabot Oil & Gas Corporation ("Cabot"). There is no allegation, nor could there be, that Plaintiffs were in any sense forced to enter into the Lease; and there is no allegation, nor could there be, that the Lease is not supported by adequate consideration. Instead, in their complaint, Plaintiffs allege that the Court should invalidate the Lease because Plaintiffs allege they were told incorrect things before they entered into it or because Plaintiffs allege that the Lease does not comply with a Pennsylvania statute. On both points, Plaintiffs are mistaken as a matter of law. The Court should dismiss the complaint for failure to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On or about June 28, 2007, Plaintiffs entered into the Lease with Cabot.[1] Plaintiffs own 124 acres of land in Susquehanna County and desired to execute a lease with Cabot so that Cabot could explore and potentially drill for natural gas. Pursuant to the Lease, Plaintiffs received a payment of seventy-five dollars ($75) per acre for entering into the Lease. This payment is referred to as a "bonus payment." In the event that gas were discovered, Plaintiffs were also entitled to one-eighth (1/8) of the amount realized from the sale of the gas at the well less any deductions taken for "post-production" costs. This payment is referred to as the "royalty payment." The post-production costs were specifically enumerated

---

[1]   Because of the standard of review governing motions under Rule 12(b)(6), Cabot's recitation of the facts in this motion treats as correct the factual allegations of the complaint. Cabot does not concede the accuracy of those allegations for any other purpose.

in the Lease as costs of gathering, transportation, compression, fuel and line loss.  All of the costs of production in retrieving the gas, such as investigation, drilling and construction of the well and retrieval of the gas up to the point of the wellhead were Cabot's responsibility and were not deducted from the royalty payment.  The term "wellhead" refers to the point at the surface of the ground where the gas travels from the well and enters into a piping system such that it is able to be transported to a point where it can be sold.   Industry standards, as will be discussed below, provide that all costs incurred prior to the gas reaching the wellhead are solely the responsibility of the lessee (gas company), but costs incurred after the gas leaves the wellhead may be prorated between the lessee (gas company) and the lessor (landowner).  Moreover, in the industry, a reference in a lease to "production" expenses is understood to mean those expenses incurred before gas is collected (*e.g.,* exploration, drilling and construction of the well).

  On April 17, 2008, Plaintiffs filed a complaint in the Court of Common Pleas of Susquehanna County, Pennsylvania, asserting two counts, which Plaintiffs denominated "fraudulent inducement" and "action for declaratory judgment."  In their fraudulent-inducement claim, Plaintiffs alleged that Cabot's agent made certain misrepresentations to them prior to the execution of the Lease and that, but for those representations, Plaintiffs would not have entered into the Lease.  In their declaratory judgment action, Plaintiffs allege that the Lease does not comply with Pennsylvania's minimum-royalty statute, and they ask the Court to invalidate the Lease as a result.

  On May 5, 2008, Cabot removed this action to the United States District Court for the Middle District of Pennsylvania.  On May 12, 2008,

Cabot filed its motion to dismiss, and it now files this supporting brief in accordance with M.D. Pa. LR7.5.

**III.    ISSUES**

    A.    WHETHER, AS A MATTER OF LAW, PAROL EVIDENCE REGARDING ALLEGED REPRESENTATIONS MADE PRIOR TO THE EXECUTION OF THE LEASE IS BARRED BY THE LEASE'S INTEGRATION CLAUSE AND BY THE PAROL-EVIDENCE RULE?

        SUGGESTED ANSWER:  YES

    B.    WHETHER, AS A MATTER OF LAW, THE OIL-AND-GAS LEASE COMPLIES WITH 58 P.S. § 33?

        SUGGESTED ANSWER:  YES

**IV.    ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of a complaint if it "fails to state a cause of action upon which relief can be granted."  FRCP 12(b)(6).  The purpose of a motion to dismiss is to test the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

In evaluating a motion to dismiss, the court should assume as true all well-pleaded facts in the complaint and construe them in the light most favorable to the non-moving party; however, the court cannot assume that the plaintiff can prove facts not alleged in the complaint or that defendants have violated the laws in ways that have not been alleged.  *Associated General Contr. Of Calif. Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  The court should only take as true well-pleaded

factual contentions, and the court is not required to accept legal conclusions as true. *Kost,* 1 F.3d at 183. *See also Doug Grant v. Greate Bay Casino Corp.,* 232 F.3d 173, 184 (3d Cir. 2000) ("Courts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner.")

In considering a motion to dismiss, the court may consider any documents attached to the complaint and "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

### A. PLAINTIFF'S CLAIM FOR FRAUDULENT INDUCEMENT IS BARRED BY THE LEASE'S INTEGRATION CLAUSE AND BY THE PAROL-EVIDENCE RULE.

In their claim for fraudulent inducement, Plaintiffs allege that they would not have entered into the Lease but for certain representations they allege Cabot's agent made to them before they signed the Lease. Plaintiffs further allege that the representations were not true, that they relied on the representations to their detriment and that their reliance was justifiable.

The complaint makes plain Plaintiffs' real grievance. It is not that Cabot did anything wrong or that the Lease is in any way unenforceable. It is that Plaintiffs entered into a lawful bargain and now believe that, had they waited, they might have struck a deal more favorable to them. However, the perception of a bad bargain is not a reason to invalidate or rewrite a

contract. "Sympathy aside, it is axiomatic that a court may not rewrite the clear provisions of a contract to make it more reasonable or to protect a party from an unwelcome result" or to "relieve a party from what turns out to be a bad bargain." *Brisbin v. Superior Valve Co.,* 398 F.3d 279, 290 (3d Cir. 2005); *see also Giant Eagle, Inc. v. Federal Ins. Co.,* 884 F. Supp. 979, 987 (W.D. Pa. 1995) ("Pennsylvania courts have consistently held that it is not the province of the court to alter a contract by construction or to make a new contract for the parties"). Similarly, the Pennsylvania Superior Court has stated as follows on this issue:

> Nor may the courts adjust any adversity befalling [a party] from the agreement into which it entered, or supplement provisions which [the party], at the time of execution, found satisfactory and acceptable, since it is not the role of the judiciary to address subsequent misgivings or later regrets of a party to a contract. Instead, the courts, under firmly established law and prudent principle, are restricted to a review of the clear and unequivocal terms of the contract.

*Temple University v. Allegheny Health Education and Research Found.*, 690 A.2d 712, 716-717 (Pa. Super. 1997) (citations omitted).

Plaintiffs' fraudulent-inducement claim is barred by the integration clause contained in the Lease at Paragraph 15 which reads as follows:

> This lease embodies the entire agreement between the parties and no representation or promise on behalf of either party shall be binding unless contained herein or mutually agreed to in writing by all parties hereto. This agreement shall be binding upon each Lessor who shall execute the same and upon Lessee from and after the date of delivery to Lessee or its representative by the executing Lessor.

An integration clause such as the one contained in the Lease precludes an allegation that one party was fraudulently induced to enter into a contract based on an alleged misrepresentation by the other party prior to the contract being signed. *See, e.g., HCB Contractors v. Liberty Place Hotel Associates*, 652 A.2d 1278 (Pa. 1995); *1726 Cherry Street Partnership v. Bell Atlantic Properties*, 653 A.2d 663 (Pa. Super. 1995); *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996).

As an indisputable matter of Pennsylvania law, the integration provision negates Plaintiffs' claim that they relied on any statements made to them before they signed the Lease.[2] In addition, to the extent that the Plaintiffs may argue otherwise, it makes no difference whether the integration clause denies the existence of prior representations or mandates that they cannot bind the parties. They are opposite sides of the same coin. For Plaintiffs to prevail, they would in essence be binding Cabot to alleged prior representations – representations that the integration clause negates.[3] As the Court is aware, and as the authority Cabot has

---

[2] Importantly, the result would be the same even if there were not an integration provision. The parol-evidence rule, which provides the rule of law that governs this issue, applies to all fully integrated contracts. The presence of an integration provision simply demonstrates that parties' intention that their agreement be considered fully integrated.

[3] Integration clauses with language similar to that of the clause in the Lease at issue in this case have been enforced. *See Precision Printing Co. v. Unisource Worldwide, Inc.,* 993 F. Supp. 338 (W.D. Pa. 1998). The integration clause in *Precision Printing* read as follows:

> This contract constitutes the entire agreement between Buyer and Seller relating to the goods or services covered hereunder. No modifications shall be binding upon the Seller unless in a writing signed by Seller's duly authorized representative . . .

7

cited makes clear, Pennsylvania law strongly enforces integration clauses. Therefore, such an argument is not supported by the law and would lack merit.

In response to previous motions in analogous cases pending before this Court, Plaintiffs' counsel has argued that the parol-evidence rule does not apply unless the alleged misrepresentation regards terms that the parties would normally include in a contract and that the alleged misrepresentations in this case are misstatements of both fact and law which would not normally appear in a contract and that, therefore, the parol-evidence rule would not apply. The case law, however, does not support such an argument. In *Interwave Tech. Inc. v. Rockwell Automation, Inc.*, No. 05-398, 2005 U.S. Dist. LEXIS 37980 (E.D. Pa. Dec. 30, 2005), the court held as follows:

> After repeated review of the contract at issue here, while several sections of the [contract] can be interpreted to have a broad application, arguably none of these sections cover the subject matter of [plaintiffs'] allegations with the considerable specificity of the contract provisions the court of appeals analyzed in *Dayhoff*, or that the Pennsylvania Supreme Court reviewed in *HCB*, or that the Pennsylvania Superior Court fastened upon in *1726 Cherry St.*, particularly when these allegations must be taken by the Court with all reasonable inferences in the Plaintiffs' favor. However, *subsequent rational applications of* Dayhoff *by the lower courts have recognized the imposition of the parol evidence rule to facts similar to those here, and this Court finds persuasive the numerous opinions that interpreted* Dayhoff *to preclude parol evidence when the plaintiff is making a claim of fraudulent inducement and the*

---

993 F. Supp. at 354. In enforcing the integration clause, the court held that no evidence of alleged prior representations was admissible to alter the terms of the written contract. *Id.* at 355.

> *contract at issue contains an integration clause.* Contract drafting is no task to be undertaken casually, of course. However, among draftsmen even of varying skills and experience, the function and phrasing of integration clauses such as the one set forth in [the contract] are familiar. To require more written discourse on the subject in this contract would be to impose a belt and suspenders style of drafting that would run the risk of creating so much verbiage that the provision could become ambiguous, if not meaningless. Fully integrated contracts preclude fraudulent inducement claims. It is no different here. Therefore, [Plaintiffs'] claim of fraudulent inducement against [Defendant] will be dismissed.

*Interwave*, 2005 U.S. Dist. LEXIS 37980 at *54-55 (emphasis added).

The plaintiff in *Titleman v. Rite Aid Corp.*, No. 00-2865, 2001 U.S. Dist. LEXIS 24049 (E.D. Pa. Nov. 13, 2001) made similar arguments, and the court in that case rejected them. In *Titleman*, the plaintiff claimed he was fraudulently induced into entering into an employment contract (which contained an integration clause) based on allegedly false information relating to the financial condition of the employer. The plaintiff claimed that the parol-evidence rule did not apply to bar his claim because the subject matter of Rite Aid's financial information was not included in his employment agreements. Titleman, 2001 U.S. Dist. LEXIS 24049 at *12-13. In rejecting the plaintiff's argument, the court concluded that the plaintiff "reads this series of Pennsylvania and Third Circuit cases too narrowly." *Id.* at *13. The court noted that the application of the parol-evidence rule in those cases was *not* simply based on the fact that the subject matter of the misrepresentations was included in the contract, but was also based on the existence of the integration clauses in the contracts. Thus, the existence of an integration clause is dispositive. To be sure:

9

> Other judges of this Court, as well as another court in this Circuit, have held that Pennsylvania's parol evidence rule barred a plaintiff's claim of fraud in the inducement even though the subject of the allegedly fraudulent statement was not referred to in the integrated contract at issue.
>
> * * *
>
> The analysis of these cases makes sense. One of the assumptions underlying the parol evidence rules is that "parties logically will insist on the inclusion of all matters material or important to them in any integrated contract." The plaintiff's reading of the rule runs counter to this assumption.

*Id.* at * 14-16 (citations omitted).

Plaintiffs' claims are without merit, and the Court should dismiss their fraudulent-inducement claim for failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### C.    THE OIL-AND-GAS LEASE COMPLIES WITH 58 P.S. § 33.

Plaintiffs also allege in their complaint that the lease should be declared invalid because it violates 58 P.S. § 33 with respect to royalty payments. Specifically, the Lease provides as follows:

> Lessee . . . shall pay the Lessor on gas, including casinghead gas and other gaseous substances, produced and sold from the premises one-eighth (1/8th) of the amount realized from the sale of gas at the well (meaning the amount realized less all costs of gathering, transportation, compression, fuel, line loss and other post-production expenses incurred downstream of the wellhead).

*See* Lease at ¶ 3. Before Cabot can respond, we must first do our best to understand why Plaintiffs believe that the lease they signed is invalid or void (the complaint is vague about what aspect of the Lease Plaintiffs allege to run afoul of Section 33). There can be no rational debate or

misunderstanding that the lease provides for one-eighth as that fraction is specifically set out in the quoted provision. Plaintiffs are thus to be paid one-eighth of the amount realized from the sale of oil or gas at the well. The Lease, therefore, promises Plaintiffs a one-eighth royalty. Based on arguments their counsel has made in other, similar cases, Cabot presumes that Plaintiffs must be arguing that the words "less all costs…. downstream of the well head" somehow operate to reduce the royalty they are to receive to less than that required by Pennsylvania statute. The success of Plaintiffs' argument is determined, then, by what components make up the calculation of royalty under Pennsylvania law and whether the Lease's deduction for post-production expenses renders the royalty less than one-eighth..

Industry standards and practice in essentially all of the oil-and-gas producing states as well as case law from all such jurisdictions prove that Plaintiffs are receiving exactly that under this lease: a full one-eighth royalty. The costs referred to in the lease are costs that no jurisdiction of which Cabot is aware treats as part of the calculation of a royalty interest.

### 1. Requirements of 58 P.S. § 33.

The statutory provision on which Plaintiffs rely, entitled "Guarantee of Minimum Royalties," includes the following:

> A lease or other such agreement conveying the right to remove or recover oil, natural gas or gas of any other designation from lessor to lessee shall not be valid if such lease does not guarantee the lessor at least one-eighth royalty of all oil, natural gas or gas of other designations removed or recovered from the subject real property.

58 P.S. § 33. There has been little, if any, case law interpreting this provision as it appears in Pennsylvania law. The term "royalty" is not defined in the statute,[4] nor is it defined in any case law interpreting the statute. When a word is used in a statute and is not defined in that statute or by case law, Pennsylvania law dictates that the term be construed "according to its common and approved usage pursuant to the rules of statutory construction." *City of Harrisburg v. School District*, 710 A.2d 49, 52 (Pa. 1998).[5] The applicable rule of statutory construction provides as follows:

---

[4] It is anticipated that Plaintiffs will rely upon Chapter 12 of Title 58, a separate statute entitled the "Dormant Oil and Gas Law," which governs the establishment and procedure for payment of royalties into trusts under circumstances in which the person or entity entitled to the royalty is unknown. The Dormant Oil and Gas Law contain a definitional section which provides a definition for royalty payments as "an interest in an oil and gas lease which entitles the owner to share in the production of the oil or gas under a lease or the proceeds from a lease without the obligation to pay any costs of production under the lease." 58 P.S. § 701.3. This definition does not apply to the provisions of 58 P.S. § 33 which are at issue in this case and which are not part of the Dormant Oil and Gas Law. Furthermore, the Dormant Oil and Gas Law is inapplicable in this case as the person or entity entitled to the royalty is not unknown. Nevertheless, the definition *is consistent with the Lease at issue and is also consistent with the industry standard definition of royalties.*

[5] It is also anticipated that Plaintiffs will argue that Section 33 of Chapter 1 is a remedial statute enacted to protect the public, based on a reference to the "declaration of purpose" contained within Chapter 11 ("Oil and Gas Act") of Title 58 and that the statute should, therefore, be liberally construed in his favor. However, Section 33 is not a remedial statute. The "declaration of purpose" for Chapter 11 ("Oil and Gas Act"), enacted December 19, 1984, is *not* a declaration of purpose for Chapter 1 ("Oil and Gas Wells"), enacted July 20, 1979. Consequently, any argument or contention that Section 33 of Chapter 1 is a remedial statute enacted to protect the public, is wrong.

> Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but *technical words* and phrases and such others *as have acquired a peculiar and appropriate meaning* or are defined in this part, *shall be construed according to such peculiar and appropriate meaning or definition*.

1 Pa.C.S. § 1903(a). Consequently, if a term used in a statute has acquired a certain technical meaning, that meaning must be applied. *See also, Jacobs v. CNG Transmission Corp.,* 332 F. Supp.2d 759, 779 (W.D. Pa. 2004) (holding that "it is proper to resort to established understandings within a specialized industry when interpreting written instruments peculiar to that industry"). Pennsylvania courts may also look to the case law of other jurisdictions when considering a novel question of law. *See Springfield Twp. v. Mellon PSFS Bank*, 889 A.2d 1184, 1193 (Pa. 2005).

The overwhelming body of cases defines a "royalty" as an interest or the proceeds from the sale of that interest which are free from the costs of drilling, completing and equipping the well so as to bring the oil and gas to the surface. This widely recognized definition places all the risk of drilling, completing and equipping the well on the lessee. If the lessee drills a well which does not find oil or gas or drills a well which is not capable of economically producing oil or gas (commonly called a "dry hole") only the lessee bears those costs…the royalty owner bears no part of the costs which the lessee incurred. Thus, the risk of a dry hole is completely on the lessee. This risk is not insubstantial as drilling oil and gas wells require the lessee to risk substantial amounts of technology, labor and money with no guarantee to the lessee that oil or gas will ever be found.

The cases recognize that costs incurred after the gas leaves the wellhead are entirely a different legal issue and totally disassociated from

13

the calculation of royalty.  *See, e.g., Clear Creek Oil & Gas Co. v. Bushmiaer*, 264 S.W. 830, 832 (Ark.1924) (Arkansas); *Atlantic Richfield Co. v. State of California*, 262 Cal. Rptr. 683, 688 (2d Dist. 1989) (California); *Matzen v. Hugoton Production Co.*, 321 P.2d 576, 582 (Kan. 1958) (Kansas); *Steinberger v. Marathon Oil Co.*, 894 P.2d 788 (Kan. 1995) (Kansas, Texas and Oklahoma); *Merritt v. Southwestern Elec. Power Co.*, 499 So.2d 210 (La. Ct. App. 2d Cir. 1986) (Louisiana); *Schroeder v. Terra Energy, Ltd.,* 565 N.W.2d 887 (Mich. 1997) (Michigan); *Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225 (5th Cir. 1984), *reh'g denied*, 750 F.2d 69 (5th Cir. 1984) (Mississippi); <u>Sondrol v. Placid Oil Co.</u>, 23 F.3d 1341 (8th Cir. 1994), *reh'g denied* June 1, 1994 (North Dakota); *Horinenko v. Chevron, USA, Inc.*, 69 F.3d 283 (8th Cir. 1995) (North Dakota); *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203 (Okla. 1998) (Oklahoma); *Martin v. Glass*, 571 F.Supp. 1406 (N.D. Tex. 1983), *aff'd* 736 F.2d 1524 (5th Cir. 1984) (Texas); *Creson v. Amoco Production Co.,* 10 P.3d 853 (N.M. Ct. App. 2000) (New Mexico).

Of particular note is the decision of the Texas Supreme Court in *Heritage Resources, Inc. v. Nationsbank,* 939 S.W.2d 118 (Tex 1996), *reh'g denied* 960 S.W.2d 619 (Tex. 1997).  The court noted that "[r]oyalty is commonly defined as the landowner's share of production, *free of expenses of production*.  Although it is not subject to the costs of production, royalty is usually subject to post-production costs, including taxes, treatment costs to render it marketable, and transportation costs." *Heritage Resources*, 939 S.W.2d at 122 (emphasis added).  *See also Tana Oil & Gas Corp. v. Cernosek*, 188 S.W.3d 354, 361 (Tex. App. 2006).[6]

---

[6]   Other decisions provide that post-production costs can be allocated if they are specifically set forth or itemized in the lease.  *See, e.g., Hanna Oil*

Therefore, when this Court looks to the definition of "royalty" in the oil-and-gas industry and in the cases interpreting oil-and-gas leases, it must conclude that royalty is defined as the proceeds from the sale of the gas after all costs of production have been paid by the gas company. Responsibility for post-production expenses is a separate and distinct legal analysis to be determined by other provisions of the oil and gas lease.[7] The lease in this case exactly meets that definition and, consequently, the lease does not violate 58 P.S. § 33.[8]

## V.  CONCLUSION

The Court should grant this motion and dismiss the complaint for failure to state a claim for which relief may be granted.

---

*and Gas Co. v. Taylor*, 759 S.W.2d 563 (Ark. 1988) (Arkansas); *Garman v. Conoco, Inc.*, 886 P.2d 652 (Colo. 1994) (Colorado); *Rogers v. Westerman Farm Co.*, 29 P.3d 887 (Colo. 2001) (Colorado); *Estate of Tawney v. Columbia Natural Resources, LLC*, 633 S.E.2d 22 (W.Va. 2006) (West Virginia).

[7] In that regard, one may analogize the royalty calculation at issue here to a common business transaction involving a sale of goods. The royalty is the price paid for the goods and post production costs are "shipping and handling."

[8] As noted above, Plaintiffs rely in their complaint on the definition of "royalty interest" in 58 P.S. § 701.3. For the reasons described above, that definition does not apply to the minimum-royalty statute. However, even if it did, Plaintiffs' position would still fail as a matter of law. Section 701.3 describes a "royalty interest" as not including the costs of "production." As the cases noted above make plain, in the oil-and-gas industry, "production" refers to exploration, drilling and construction expenses. Plaintiffs' lease deducts *none* of these expenses from their royalty. Thus, even if Plaintiffs were correct to import definitions from Section 701.3, their argument would still not support a legal claim.

        Respectfully submitted,

        WRIGHT & REIHNER, P.C.

        BY: /s/ Joseph T. Wright, Jr.
        Joseph T. Wright, Jr.
        Danielle M. Mulcahey
        148 Adams Avenue
        Scranton, PA  18503
        (570) 961-1166
        (570) 961-1199 (facsimile)

        KIRKPATRICK & LOCKHART
        PRESTON GATES ELLIS LLP
        David R. Fine
        17 North Second Street, 18th Floor
        Harrisburg, PA 17101
        (717) 231-4500
        (717) 231-4501 (facsimile)

        Kenneth Komoroski
        Henry W. Oliver Bldg., 535 Smithfield St.
        Pittsburgh, PA 15222-2312
        (412) 355-6500
        (412) 355-6501 (facsimile)


        Counsel for Defendant,
        Cabot Oil & Gas Corporation

Dated:  May 27, 2008

## **CERTIFICATE OF WORD-COUNT COMPLIANCE**

I certify that the attached brief includes 3,897 words as calculated by the word-counting feature of Microsoft Word.

/s/ Joseph T. Wright, Jr.
JOSEPH T. WRIGHT, JR.

# **CERTIFICATE OF SERVICE**

    I hereby certify that I caused the foregoing Brief in Support of Motion for Summary Judgment to be filed via ECF and that the following are filing users under the ECF system.  Upon the electronic filing of a pleading or other document the ECF system will automatically generate and send a Notice of Electronic Filing to all filing users associated with this case. Electronic service by the Court of the Notice of Electronic Filing constitutes service of the filed document and no additional service upon the filing user is required.

    Michael J. Giangrieco, Esq.
    Law Office of Michael J. Giangrieco
    26 Public Avenue
    PO Box 126
    Montrose, PA  18801-0126

                              /s/ Joseph T. Wright, Jr.
                              JOSEPH T. WRIGHT, JR.

DATE:  May 27, 2008